1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7                          **DISTRICT OF NEVADA**
8
9    CARLOS NOGUERA,                    )
10                    Petitioner,        )        3:11-cv-00428-LRH-WGC
                                        )
11   vs.                                )        **ORDER**
                                        )
12   ROBERT LeGRAND, *et al.*,          )
                                        )
13                    Respondents.       )
     _____/
14

15        Before the court for a decision on the merits is an application for a writ of habeas corpus filed

16   by Carlos Noguera, a Nevada prisoner.  ECF No. 6.

17        I. BACKGROUND[1]

18        In 2006, Noguera was convicted in the state district court for Clark County, Nevada, of two

19   counts of nonforcible sexual assault upon a minor under 14 years of age.  He was sentenced to

20   concurrent terms of life with the possibility of parole after 20 years.

21        The state court record on file herein establishes the following facts.  In 2004, Noguera began

22   dating S.G.'s mother and soon thereafter moved in with S.G.'s family.  Noguera provided financial

23   support for the family and was permitted to stay in the home after his dating relationship with S.G.'s

24   mother ended.  On at least two occasions, Noguera, who was 22 years old at the time, had sexual

25

26   _____

27        [1] This history was compiled from exhibits filed at ECF Nos. 11 and 29 and this court's own
     docket entries.

intercourse with S.G., who was 11 years old.  S.G. became pregnant and gave birth in August 2005.

DNA testing confirmed that Noguera was the biological father of the child.

S.G. testified at trial that she loved Noguera and considered him her boyfriend and that he did not pressure her or trick her into having sex.  She also testified that she understood that she could have told him no, but that she did not, at any time, do so.

Noguera timely appealed his judgment of conviction.  The Nevada Supreme Court entered an order of affirmance in July 2009 and subsequently denied Noguera's petition for rehearing in September 2009.  In April 2010, Noguera filed a petition for post-conviction relief in the state district court.  The state district court entered an order denying relief in September 2010.  Noguera appealed.  The Nevada Supreme Court affirmed the lower court's decision in an order entered in May 2011.

Noguera mailed his *pro se* federal petition for writ of habeas corpus to this court in June 2011.  In December 2011, this court granted respondents' unopposed motion to dismiss.  In February 2014, the United States Court of Appeals for the Ninth Circuit reversed that decision and remanded the case for further proceedings.  In August 2014, respondents filed their answer, addressing the merits of each of Noguera's fifteen habeas claims.  Noguera filed his reply in November 2014.

II. STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9ᵗʰ Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence

presented in the state-court proceeding, § 2254(d)(2).").  Because *de novo* review is more favorable

to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in de novo

review rather than applying the deferential AEDPA standard.  *Berghuis v. Thompkins*, 560 U.S. 370,

390 (2010).

III.  ANALYSIS OF CLAIMS

**Ground One**

In Ground One, Noguera claims that his constitutional rights were violated because the jury

instructions in his case did not comport with Nevada law and minimized the State's burden of proof.

He contends that two instructions (Instruction 14 and Instruction 11) improperly directed guilty

verdicts, while three others (Instructions 5, 8, and 9) minimized the State's burden of proof by

presupposing the existence of a "victim" in the case.[2]

A faulty or deficient jury instruction in a state trial will rise to the level of a constitutional

violation only when the instruction "so infected the entire trial that the resulting conviction violates

due process." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)  (quoting *Estelle v. McGuire*, 502 U.S.

62, 71-72 (1991).  The instruction must be more than merely erroneous; petitioner must show there

was a "'reasonable likelihood that the jury has applied the challenged instruction in a way that

violates the Constitution.'"  *Middleton*, 541 U.S. at 437 (citations omitted); *see also Boyde v.

California*, 494 U.S. 370, 380 (1990); *Cupp v. Naughten*, 414 U.S. 141, 146 (1973) ("Before a

federal court may overturn a conviction resulting from a state trial in which [an allegedly faulty]

instruction was used, it must be established not merely that the instruction is undesirable, erroneous

or even 'universally condemned,' but that it violated some right which was guaranteed to the

defendant by the Fourteenth Amendment.").  Further, "[i]t is well established that the instruction

'may not be judged in artificial isolation,' but must be considered in the context of the instructions as

a whole and the trial record." *McGuire*, 502 U.S. at 72 (citation omitted); *Cupp*, 414 U.S. at 147.

Finally, habeas relief is not available unless the alleged instructional error had a substantial and

---

[2]  Ground One includes Instruction 14 as an instruction that includes the word "victim," but, unlike the other three instructions, Instruction 14 uses "alleged" as a qualifier.  ECF No. 29-14, p. 16.

injurious effect or influence in determining the jury's verdict. *Calderon v. Coleman*, 525 U.S. 141, 147 (1998) (applying *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Instruction 14 read, in part, as follows:

> On the other hand, consent is never a defense to a charge of lewdness with a minor under fourteen (14) years of age. Therefore, if the jury finds beyond a reasonable doubt that the defendant had sexual intercourse with the alleged victim while she was less than fourteen (14) years of age with the intent of arousing, appealing to, or gratifying the lust, passions or sexual desires of himself or the alleged victim, but finds such did not amount to sexual assault under the law for any reason, then the offense of lewdness with a minor under fourteen (14) years of age has been committed and the jury should so find (whether or not the defendant was found guilty of statutory sexual seduction or not guilty as to each allegation of sexual assault).

Defense counsel objected to the instruction on several grounds, including on the ground that it directed the jury to find Noguera guilty of lewdness regardless of its findings on statutory sexual seduction. ECF No. 29-13, p. 39-46.[3] The trial judge responded by stating, "[I]f there is consent, he's guilty of lewdness. If there's not consent, he's guilty of sexual assault. He can never be not guilty of both." *Id*. at 45. The judge further stated that he agreed with defense counsel's argument that the instruction rendered "meaningless" the inclusion of the statutory sexual seduction charges and that, if the jury returned guilty verdicts on both the lewdness counts and the statutory sexual seduction counts, he would dismiss the latter. *Id*. at 46, 52.

On direct appeal, Noguera challenged the trial court's issuance of Instruction 14. The Nevada Supreme Court rejected his arguments as follows:

> Noguera challenges jury instruction 14, which he contends improperly directed a verdict for either sexual assault or lewdness, and thereby diverted the jury from possibly rendering a verdict for statutory sexual seduction. As discussed below, we disagree with Noguera's characterization of this instruction.
>
> . . .
>
> [W]hile [Instruction 14] assumes that only verdicts for sexual assault or lewdness were possible and, indeed, the district court privately informed counsel that it would dismiss a verdict for statutory sexual seduction, the jury was separately instructed on the elements of statutory sexual seduction, was advised that it could consider a verdict for this lesser offense in case it acquitted Noguera of sexual assault, and was given the option to convict Noguera of statutory sexual seduction on the verdict form. Thus, contrary to Noguera's characterization of instruction 14, and

---

[3] References to page numbers in the record are based on CM/ECF pagination.

5

despite the district court's unrealized threat to dismiss a verdict for statutory sexual seduction, we conclude that the jury was able to meaningfully consider Noguera's possible guilt of this offense.

ECF No. 11-5, p. 5-6 (footnote omitted).

The question before this court is whether the foregoing decision was contrary to, or involved an unreasonable application, of U.S. Supreme Court precedent.[4] Noguera argues that the instruction, as confirmed by the trial court's comments, effectively advised the jury that it must find Noguera guilty of either sexual assault (if there was not consent) or lewdness (if there was consent). According to Noguera, the instruction relieved the State of proving the intent element that distinguishes lewdness from statutory sexual seduction and had the effect of preempting the jury's consideration of statutory sexual seduction as a lesser included offense.

This court agrees that the trial judge appeared to ignore the distinction between lewdness and statutory sexual seduction and to disregard the latter as a viable alternative verdict. In addition, the above-quoted portion of Instruction 14 is misleading with respect to the availability of statutory sexual seduction as a lesser included offense. Even so, the judge's comments on the issue were made outside the presence of the jury and, notwithstanding those comments, the instruction does require the jury to find that the defendant possessed the requisite intent in order to return a guilty verdict on a count of lewdness. In addition, the Nevada Supreme Court's findings of fact – i.e., that the jury was separately instructed on the elements of statutory sexual seduction, was advised that it could consider a verdict for that lesser offense if it acquitted Noguera of sexual assault, and was given a statutory sexual seduction option on the verdict form – are all supported by the record. ECF No. 29-13, p. 76-80; ECF No. 29-14, p. 12-14; ECF 29-16.

---

[4] Grounds One through Ten of Noguera's federal petition were presented to the Nevada Supreme Court in his direct appeal. The Nevada Supreme Court summarily denied many of Noguera's arguments in a footnote. *Id.* at 6. And, while the court explained its reasons for rejecting some his arguments, it did not cite directly to federal law or refer to the federal law component of Noguera's arguments. *Id.* at 2-6. Even so, this court must presume that the state supreme court adjudicated his federal law claims on the merits for the purposes of 28 U.S.C. § 2254(d). *See Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits.").

In summary, reasonable jurists could at least disagree about whether the use of Instruction 14, viewed within the context of the state court record as a whole, deprived Noguera of a trial that met constitutional due process standards. Thus, the Nevada Supreme Court decision is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 101. Accordingly, petitioner is not entitled to federal habeas relief based on this claim.

Instruction 11, the other instruction Noguera claims to have directed guilty verdicts, read as follows:

> "Statutory sexual seduction" includes sexual intercourse committed by a person eighteen (18) years of age or older with a consenting person under the age of sixteen (16) years.
>
> As a matter of law a person under the age of sixteen (16) is incapable of consenting to the above acts. Therefore, in a prosecution for statutory sexual seduction, it is no defense that the person may have consented to one or more of the above described acts. Mistake of fact, as to the person's age, is no defense to the crime.

According to Noguera, the first sentence of the second paragraph removed lack of consent as an element of sexual assault because there was no language limiting the provision to statutory sexual seduction. As a result, Noguera argues, the instruction directed jurors to guilty verdicts on both counts of sexual assault.

Here again this court is not convinced that there is a reasonable likelihood that the jury applied the instruction in a way that violates the Constitution. While not a model of clarity, the instruction as whole is reasonably interpreted as addressing only statutory sexual seduction, not the other charges Noguera was facing. In addition, the jury was specifically instructed that the crime of sexual assault required proof of sexual penetration "under conditions in which the defendant knew or should have known that the alleged victim was either mentally or physically incapable of resisting or understanding the nature of his conduct, or of knowingly and intelligently consenting or understanding the nature of the act." ECF No. 29-14, p. 6. Thus, Instruction 11 does not provide grounds for habeas relief.

///

With regard to Instructions 5, 8, and 9, Noguera argues that repeated reference to S.G. as a "victim" unconstitutionally minimized the prosecution's burden of actually proving that there was a victim in the case. The Nevada Supreme Court rejected, without discussing, this argument in deciding Noguera's direct appeal. ECF No. 11-5, p. 6.

Federal courts have generally held that "the use of the word 'victim' in the jury instructions is not prejudicial to a defendant's rights when the instructions taken as a whole clarify the government's burden of proving all elements of the crime." *United States v. Washburn*, 444 F.3d 1007, 1013 (8th Cir. 2006). Perhaps, the phrase "alleged victim" would have been preferable, but, in each of the instructions Noguera challenges, the word "victim" was a clear and concise way to refer to the person who was object of the defendant's alleged acts. Moreover, defense counsel conceded at trial that Noguera's conduct in relation to S.G. made him guilty of a crime. ECF No. 29-12, p. 16-17.

The question before the jury was not whether there was a victim in the case, but instead, *which* crimes Noguera had committed. The instructions in question did not, by their use of the word "victim," impermissibly steer the jury toward finding Noguera guilty of a particular crime. Thus, the use of the word "victim" did not "so infect[] the entire trial that the resulting conviction violates due process." *McGuire*, 502 U.S. at 72.

Ground One is denied.[5]

**Ground Two**

In Ground Two, Noguera claims that his constitutional rights were violated because the trial court refused to adequately instruct the jury on the defense theory of the case – that being that Noguera held a reasonable and good faith belief that S.G. voluntarily consented to sexual intercourse. At trial, defense counsel proposed the following instruction:

> In the crime of sexual assault, criminal intent must exist at the time of the commission of the crime charged.

---

[5] Noguera also alleges in Ground One that a jury instruction improperly validated S.G.'s testimony by stating that the testimony of a victim of sexual assault need not be corroborated in order to sustain a guilty verdict. No U.S. Supreme Court precedent holds that such a jury instruction violates the federal constitution. In addition, the Ninth Circuit has approved no-corroboration instructions. *See Bruce v. Terhune*, 376 F.3d 950, 956 (9th Cir. 2004).

There is no criminal intent if the defendant had a reasonable and good faith belief that the other person voluntarily consented to engage in sexual intercourse. Therefore, a reasonable and good faith belief that there was voluntary consent is a defense to such a charge, unless the defendant thereafter became aware or reasonably should have been aware that the other person no longer consented to the sexual activity.

However, a belief that is based upon ambiguous conduct by an alleged victim that is the product of conduct by the defendant that amounts to force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person of the alleged victim or another is not a reasonable good faith belief.

If after consideration of all of the evidence you have a reasonable doubt that the defendant had criminal intent at the time of the accused sexual activity, you must find him not guilty of the crime.

ECF No. 29-15.

In refusing to include the instruction, the trial judge stated that the instruction was designed for cases in which there is uncertainty as to whether the alleged victim willingly engaged in the alleged conduct. ECF No. 29-13, p. 48-50. According to the trial judge, the instruction was inappropriate in Noguera's case because the dispute centered on whether S.G. had the *capacity* to consent to sexual intercourse with the defendant, not over whether she voluntarily participated in the conduct. *Id*.

On direct appeal, Noguera challenged the trial court's refusal to issue the proposed instruction. The Nevada Supreme Court rejected his arguments as follows:

Noguera contends that the district court abused its discretion in denying his proposed jury instruction on the defense of reasonable mistaken belief in consent. *See Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005) (district courts have broad discretion to settle jury instructions). We disagree for two reasons.

First, Noguera sought his instruction under *Honeycutt v. State*, 118 Nev. 660, 56 P.3d 362 (2002), *overruled on other grounds by Carter v. State*, 121 Nev. 759, 765, 121 P.3d 592, 596 (2005), a forcible rape case, and proffered a replica of the reasonable-mistaken-belief-in-consent instruction given there – instruction 10.65 of the California Jury Instructions for Criminal Cases (CALJIC). However, as the district court correctly recognized, and as the comment to CALJIC 10.65 confirms, Noguera's instruction, as proposed, was designed for use against a charge of forcible rape, and only in the limited circumstance when there is substantial conflicting evidence respecting actual consent, i.e., equivocal conduct suggesting consent was manifested . *See* 1 *California Jury Instructions, Criminal* 10.65, at 693-94 (7th ed. 2003); *see also Honeycutt*, 118 Nev. at 671, 56 P.3d at 369 (citing the comment to CALJIC 10.65 and recognizing this instruction's limits). Here, everyone agreed the alleged victim ostensibly consented; indeed, she testified she was in love with Noguera. The issue was whether this eleven year old girl had the capacity to consent,

a different issue. Thus, while Noguera's full reproduction of CALJIC 10. 65 may have offered an appropriate defense in a forcible rape case, it raised an inapposite defense to a charge of nonforcible sexual assault where capacity to consent, as distinguished from actual consent, formed the contest.[1]

Second, we reject Noguera's contention that, absent his proposed instruction, the jury was prevented from evaluating his defense that he reasonably believed in the 11-year-old victim's capacity to effectively consent to sexual intercourse because she was unusually mature and understood sex. Here, the jury was not instructed, as the dissent insists, that the victim was too young to consent as a matter of law. On the contrary, the jury was told, as NRS 200.366(1) provides, that it could not find Noguera guilty of sexual assault unless it found, beyond a reasonable doubt, that the sexual penetration occurred "under conditions in which the defendant knew or should have known that the alleged victim was either mentally or physically incapable of resisting or understanding the nature of his conduct, or of knowingly and intelligently consenting or understanding the nature of the act." Amplifying the capacity to consent issue that the jury was tasked to decide, instruction 5 advised:

> Physical force is not necessary in the commission of sexual assault. The crucial question is not whether a person was physically forced to engage in a sexual assault but whether the act was committed without her consent or under conditions in which the defendant knew or should have known, the person was incapable of giving her consent or understanding the nature of the act. To determine whether the acts occurred against the will of the victim or under conditions in which the victim was incapable of giving consent, factors to be considered include the relationship between the perpetrator and the victim, the victim's age and maturity level, and indications of the victim's expression of unwillingness.

Accordingly, despite not receiving his proposed instruction, which failed to properly capture his own theory of defense, the jury was nevertheless allowed an adequate opportunity to consider Noguera's defense under the instructions as submitted. *Cf. Rose v. State*, 123 Nev. 194, 205, 163 P.3d 408, 415 (2007) ("It is not error for a court to refuse an instruction when the law in that instruction is adequately covered by another instruction given to the jury." (quotation omitted)).

---

[1] The distinction inheres in Nevada's sexual assault statute, which penalizes both forcible and non-forcible assault, depending on the circumstances, and provides, "A person who subjects another person to sexual penetration ... against the will of the victim or under conditions in which the perpetrator knows <u>or</u> should know that the victim is mentally or physically incapable of resisting or understanding the nature of his conduct, is guilty of sexual assault." (Emphasis added.) The defendant in *Honeycutt*, was prosecuted under the first clause of this sentence; Noguera, under the second.

ECF No. 11-5, p. 2-5.

Again, the question before this court is whether the foregoing decision was contrary to, or involved an unreasonable application, of U.S. Supreme Court precedent. Petitioner cites to

10

*Matthews v. United States*, 485 U.S. 58, 63 (1988), but that case was decided as a matter of federal criminal procedure, not on constitutional grounds.

The Ninth Circuit has couched the issue as one implicating the due process requirement that criminal defendants be afforded a meaningful opportunity to present a complete defense, as recognized in *California v. Trombetta*, 467 U.S. 479, 485 (1984). *See Clark v. Brown*, 450 F.3d 898, 904–05 (9th Cir. 2006); *Bradley v. Duncan*, 315 F.3d 1091, 1098-99 (9th Cir. 2002). The Supreme Court has, however, cautioned the lower federal courts to not frame Supreme Court precedents too broadly when applying § 2254(d). *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014). "Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'" *Id*. (quoting *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013)). Indeed, the Supreme Court in one case expressly refrained from extending *Trombetta* into the realm of jury instructions, noting that it had confined application of the principle to cases dealing with the exclusion of evidence or the testimony of defense witnesses and that instructional errors of state law generally may not form the basis for federal habeas relief. *See Gilmore v. Taylor*, 508 U.S. 333, 343-44 (1993).[6]

Because no U.S. Supreme Court case directly addresses whether a constitutional violation may arise from a trial court's refusal to issue a jury instruction proposed by the defense, it cannot be said that the Nevada Supreme Court's decision is not entitled to deference under 28 U.S.C. § 2254(d). *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the [issue presented] here, it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"). Moreover, it is not for this court to correct the Nevada Supreme Court's determination that, under Nevada law, the *Honeycutt* instruction is appropriate only

---

[6] This court has surveyed the U.S. Supreme Court cases since *Gilmore v. Taylor* that have applied *Trombetta* and all them involve a claimed impediment to the presentation of evidence or testimony. *See, e.g., Nevada v. Jackson*, 133 S. Ct. 1990 (2013) (addressing whether state court reasonably applied federal law when it determined that petitioner was not denied a right to present a complete defense when he was barred from presenting extrinsic evidence of victim's prior accusations of sexual assault). None of them touch on whether the principle in *Trombetta* can provide relief for an error related to jury instructions.

where the State is alleging "forcible rape." *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."). So, even if this court questions whether the trial court adequately instructed the jury on Noguera's theory of defense, it cannot grant habeas relief on that ground.

Ground Two is denied.[7]

### Ground Three

In Ground Three, Noguera claims that his constitutional rights were violated because the trial court improperly limited the defense's ability to conduct voir dire. During voir dire, the trial judge refused to allow Noguera's counsel to ask prospective jurors whether they believed an eleven year-old can consent to sexual intercourse. ECF No. 29-12, p. 5-7. The trial judge indicated that he suspected "99 percent of potential jurors" would say "no," which would make it impractical to impanel a jury. *Id.*

The Nevada Supreme Court did not explain its reasons for rejecting the claim contained in Ground Three. ECF No. 11-5, p. 6. As a starting point, there is no constitutional right to unlimited voir dire. *See Morgan v. Illinois*, 504 U.S. 719, 729 (1992). Instead, trial courts have considerable discretion in defining the manner and scope of voir dire. *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991). The trial court abuses its discretion only if it limits voir dire so as to render the defendant's trial fundamentally unfair, or if the questioning is not reasonably sufficient to test the jury for bias. *United States v. Patterson*, 648 F.2d 625, 630 (9th Cir. 1981).

No U.S. Supreme Court precedent indicates that a trial court's refusal to allow a particular inquiry during voir dire, in a non-capital case, violates a defendant's constitutional right to a fair trial. In addition, Noguera has not demonstrated that the trial court's questioning was not reasonably sufficient or that it resulted in the seating of a biased juror. Thus, Ground Three must be denied.

///

---

[7] Noguera also alleges in Ground Two that he is entitled to habeas relief due to the trial court's refusal to issue three other proposed instructions, which are located in this court's record at ECF No. 29-15, p. 10-12. For the reasons stated above, this court must defer to the Nevada Supreme Court's decision to deny relief on that issue as well.

**Ground Four**

In Ground Four, Noguera claims that his constitutional rights were violated because the trial court restricted his right to confront witnesses against him. He claims the violation arose from the trial court's ruling to exclude evidence regarding the death of S.G.'s infant, who had died while in foster care. According to Noguera, he had a right to cross-examine witnesses about this issue because witnesses involved in the removal of the child from the family and the child's subsequent death had a motive to justify their actions and protect themselves by providing testimony favorable to the State.

The Nevada Supreme Court did not explain its reasons for rejecting the claim contained in Ground Four. ECF No. 11-5, p. 6. The Confrontation Clause guarantees criminal defendants the right to cross-examine government witnesses regarding their "biases and motivations to lie." *United States v. Larson*, 495 F.3d 1094, 1102 (9th Cir. 2007) (en banc); *see also Davis v. Alaska*, 415 U.S. 308, 318 (1974). Even so, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The relevant inquiry on review is: (1) whether the trial court excluded relevant evidence; (2) whether "there were other legitimate interests outweighing the defendant's interest in presenting the evidence;" and (3) whether the jury had "sufficient information to assess the credibility of [each] witness." *Larson*, 495 F.3d at 1102-03.

Noguera's assertion that cross-examination regarding the circumstances surrounding the infant's death could have been used to impeach witnesses is theoretical at best. More to the point, he has not demonstrated how the evidence could have been used to undermine the credibility of any particular witness. *See Van Arsdall*, 475 U.S. at 680 (stating that the inquiry into the prejudice necessary to establish a Confrontation Clause violation "must be on the particular witness"). Thus, he has not established that the excluded evidence was relevant.

In addition, other legitimate interests outweighed Noguera's interest in presenting the evidence. For one, there was a danger that the evidence, due to its sensational nature, would have served to confuse the jury and cloud the issues the jury was being asked to decide. In addition, the

cross-examination of the State's witnesses was not otherwise limited in any significant regard and the exclusion of this vaguely-pertinent evidence still left the jury with sufficient information to assess the credibility of each witness.

Based on the foregoing, this court concludes that the trial court did not violate the Confrontation Clause by excluding evidence related to the death of S.G.'s child. Ground Four is denied.

### Ground Five

In Ground Five, Noguera claims that the trial court's admission of inflammatory and irrelevant evidence violated his constitutional right to a fair trial. Specifically, Noguera challenges the trial court's denial of his pre-trial motion to exclude evidence of her pregnancy and subsequent delivery of the child. According to Noguera, the evidence had no probative value because he and S.G. each acknowledged that sexual intercourse had occurred. Noguera claims the evidence only served to inflame and prejudice the jury by focusing its attention on the fact that he had impregnated an eleven year old, rather on the determination of which crime he committed.

The Nevada Supreme Court did not explain its reasons for rejecting the claim contained in Ground Five. ECF No. 11-5, p. 6. When a petitioner challenges the admission of particular evidence, reviewing federal courts will not find a due process violation as long as the challenged evidence is relevant to an issue in the case and a permissible inference can be drawn from that evidence. *McGuire*, 502 U.S. at 70. "[N]othing in the Due Process Clause of the Fourteenth Amendment requires the State to refrain from introducing relevant evidence simply because the defense chooses not to contest [a] point." *Id*.; *see Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (Where several inferences arise from admitted evidence, the jury is relied upon to "sort them out in light of the court's instructions"). "Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process." *Jammal*, 926 F .2d at 920; *see also Larson v. Palmateer*, 515 F.3d 1057, 1065 (9th Cir. 2008) (holding that, for purposes of federal habeas review, it is "irrelevant" whether the trial court's evidentiary ruling is correct or not under

///

state law; the only question "is whether the ruling 'rendered the trial so fundamentally unfair as to violate due process'" (citation omitted)).

Here, evidence that S.G. became pregnant was certainly relevant to the issue of whether she had engaged in sexual intercourse. Evidence that she delivered a child was necessary as a foundation to the DNA evidence the State presented to confirm Noguera was the father. No U.S. Supreme Court case holds, or even suggests, that the presentation of otherwise relevant and reliable evidence can give rise to a constitutional violation on the ground that it is cumulative and/or unduly provocative. Thus, the Nevada Supreme Court's decision denying the claim in Ground Five is entitled to deference under § 2254(d).

Ground Five is denied.

**Ground Six**

In Ground Six, Noguera claims that his constitutional rights were violated due to numerous instances of prosecutorial misconduct. Noguera cites to (1) comments the prosecutor made in her closing argument that Noguera claims to have improperly disparaged the defense, (2) remarks made in opening and closing argument that Noguera claims were irrelevant and inflammatory, and (3) comments that, according to Noguera, constitute a misstatement of the evidence and/or the introduction of facts not in evidence.

The Nevada Supreme Court did not explain its reasons for rejecting the claim contained in Ground Six. ECF No. 11-5, p. 6. "Improper argument does not, per se, violate a defendant's constitutional rights." *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993) (citations omitted). Habeas corpus relief is available on grounds of improper argument only when the "prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 171 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Relief will be granted when the prosecutorial misconduct amounts to constitutional error, and such error is not harmless under the test announced in *Brecht* (507 U.S. at 637), which asks whether the error had a substantial and injurious effect in determining the verdict. *See Fields v. Woodford*, 309 F.3d 1095, 1109, *amended* 315 F.3d 1062 (9th Cir. 2002).

1    The comment that Noguera claims to have improperly disparaged the defense occurred as a

2   result of S.G. mentioning in her direct testimony (without being specifically asked) that she had

3   engaged in sexual intercourse prior to acts alleged in this case.  ECF No. 29-12, p. 26.  In response to

4   defense counsel alluding to the fact in her closing argument, the prosecutor made the following

5   comment in her closing rebuttal argument:

6           [Defense counsel] made an argument to you, and I didn't object to it, and I'm
        going to talk to you about it now.  She told –  she slipped in there that this child had
7       sex before.  I'm here to tell you, you don't know the circumstances of any sexual
        encounter that she had or didn't have.  You don't know the perpetrator.  You don't
8       know anything about it.  It is inappropriate for your consideration, and [defense
        counsel] knows that, and she shouldn't have brought it up to you.

9

10  ECF No. 29-12, p. 83.  Defense counsel objected to the comment and later, outside the presence of

11  the jury, moved for a mistrial on the grounds that the prosecutor's comments improperly maligned

12  defense counsel and undercut her credibility with jurors.  *Id.* at 89.

13      This court is not convinced that the comments at issue were even improper, let alone

14  sufficient to cause the type of harm that would provide grounds for habeas relief.  Defense counsel's

15  reference to S.G.'s comment during her closing argument was arguably objectionable, so the

16  prosecutor's response was not necessarily unwarranted.  Given the circumstances, the prosecutor's

17  comment did not so infect the trial with unfairness as to deny Noguera due process.  *Cf. Williams v.*

18  *Borg*, 139 F.3d 737, 745 (9th Cir. 1998) (finding no violation of due process where prosecutor told

19  jury that defense counsel used "the cheapest lawyer's tactic in the book" by purposely introducing

20  testimony that defense counsel knew would be stricken).

21      With respect to his claim that the prosecutor made inflammatory and irrelevant comments in

22  arguing the State's case, Noguera cites the prosecutor's references to "the Special Victim's Unit" in

23  her opening statement and closing argument (ECF No. 29-12, p. 13; ECF No. 29-13, p. 54)), her

24  comment at the outset of her closing argument –  "Babies having babies.  11-years-old" (ECF No.

25  29-13, p. 54), and her emphasis on the fact that S.G. had given birth –  ". . . what I can't get past and

26  what I've never gotten past in this case is the fact that she is 11, 11 years old, and she delivered a

27  child" (*Id.*).

"Counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom." *Ceja v. Stewart*, 97 F.3d 1246, 1253-54 (9th Cir. 1996) (quoted source omitted). The trial court instructed the jury in Noguera's trial that it "may never be influenced by sympathy, prejudice, or public opinion." ECF No. 29-14, p. 23. The jury is presumed to have followed that instruction. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Viewed in the context of the entire trial, the comments at issue fell well short of having a substantial and injurious effect or influence on the jury's verdict.

Turning to the comments Noguera claims were a misstatement of the evidence, he cites the following comments made during the prosecutor's closing argument:

> You don't get nice guy points for apologizing. Once the concept of DNA was explained to Juan Carlos that we will know who you are, we will know who fathered that baby, then came the taking of responsibility.
>
> . . .
>
> I'm here because of the pregnant one, but I didn't get her pregnant. That's his first response. Then when told and explained what DNA is and we can figure out who the dad is, then he takes responsibility for impregnating an eleven year old because, Hey, the gig's up.

ECF No. 29-13, p. 81. Noguera contends that these statements were an inaccurate characterization of the testimony of the detective who interviewed him, which had the effect of suggesting to the jury that he had a guilty conscience.

Be that as it may, the trial judge pointed out, in overruling defense counsel's objections to the comments, that "both characterizations could be reasonably argued," that each counsel could argue her own version of the evidence, and that it was up to the jury to "rely on their own memory." *Id*. In addition, the jury was instructed that the evidence it was to consider was "the testimony of the witnesses, the exhibits, and any facts admitted to or agreed to by counsel" and that the "[s]tatements., arguments and opinions of counsel are not evidence." ECF No. 29-14, p. 20. As a result, any prejudicial impact the comments may have had was cured by the trial court's admonition and jury instructions.

Lastly, Noguera argues that the prosecutor implied facts not in evidence by suggesting he was a repeat offender or predator. He cites to the following comments in the prosecutor's closing arguments:

> And I submit to you the Defendant, the predator, took advantage of that.
>
> . . .
>
> He infiltrates their life. He has a short relationship with Mom. I submit it was used to do nothing more than to get access to that kid because that's his preference.

ECF No 29-13, p. 57.

> There's men that are attracted to young children; that's what they do. They have sex with them in secret. They don't hold them out and parade them.

*Id*. at 87.

Once again, the court instructed the jury to base its decision only on the evidence, and not the statements of counsel. Because the prosecutor qualified the first two remarks with "I submit to you" and was speaking hypothetically in third remark, the jurors would have known that these comments were inferences and would not have been confused into believing that they were factual evidence. Even if these statements bordered on being improper, it is difficult to conceive how they distracted the jury from the actual evidence so as to render the trial fundamentally unfair.

Based on the foregoing, Noguera has not established that prosecutorial misconduct in his case deprived him of a trial that met constitutional standards. Ground Six is denied.

### Ground Seven

In Ground Seven, Noguera claims that his constitutional right to due process was violated because there was insufficient evidence to support the verdicts of guilt beyond a reasonable doubt. Specifically, Noguera alleges that the State failed present evidence to support a finding that he knew or should have known that S.G. was mentally or physically incapable of resisting or understanding

///

///

///

the nature of his conduct. *See* Nev. Rev. Stat. § 200.366(1) (2003).[8]  In support of this claim,

Noguera points to evidence that S.G., at the time of the relevant acts, was very mature for her age,

often acted like a mother to her two younger brothers, understood physical relationships, and had

already discussed sex education with her mother.  In addition, he cites to S.G.'s testimony that

people have sex because they are attracted to each other and because they love each other and that

she understood that she could have declined to have sex with Noguera, but did not do so because she

liked him.

The Nevada Supreme Court did not explain its reasons for rejecting the claim contained in

Ground Seven.  ECF No. 11-5, p. 6.  The standard used by the federal habeas court to test whether

sufficient evidence supports a state conviction is the "rational factfinder" standard established in

*Jackson v. Virginia*, 443 U.S. 307 (1979).  *Mikes v. Borg*, 947 F.2d 353, 356 (9th Cir. 1991).  Under

that standard, the court inquires as to "whether, after viewing the evidence in the light most favorable

to the prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citation omitted).  And because this court

must review the Nevada Supreme Court's sufficiency of evidence determination under AEDPA,

"there is a double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d

957, 964 (9th Cir. 2011).  That means that even if this court "think[s] the state court made a mistake,"

the petitioner is not entitled to habeas relief unless the state court's application of the *Jackson*

standard was "'objectively unreasonable.'" *Id*.

Under Nevada law, a victim's age and maturity level and the influence of the defendant over

the victim are relevant in determining whether acts occurred against the alleged victim's will or

under conditions in which the perpetrator knew or should have known that the alleged victim was

incapable of consent. *Shannon v. State*, 783 P.2d 942, 947 (Nev. 1989).  Here, the evidence

established that S.G. was in the fifth grade when Noguera had sexual intercourse with her.  ECF No.

---

[8]  In 2015, the statute was amended to provide that sexual penetration of a child under the age of 14 years is statutory sexual assault. *See* Nev. Rev. Stat. 200.366(1)(b).

29-12, p. 21-22.  In reviewing the trial transcript of S.G.'s testimony, this court notes that she responded to nearly all of the questions (including open-ended questions) with very short, rudimentary answers.  *Id*. at 17-50.  She was unable or unwilling to provide basic details regarding important events, such as the approximate date and circumstances of the first time she had intercourse with Noguera.  *Id*. at 22-26.  Overall, her testimony indicates a lack of maturity that supports a finding that Noguera should have known that she was mentally incapable of understanding the nature of his conduct.

Evidence also established that Noguera moved into S.G.'s home as the boyfriend of S.G.'s mother, supported the family financially, and took the family on outings.  ECF No. 29-12, p. 21-22, 35, 37, 57, 65.  From this, a rational juror could infer that S.G. perceived Noguera as a father figure or a person of authority in the household and that Noguera was aware (or at least should have been aware) that S.G. perceived him as such.

Viewing the trial record as a whole, the evidence supporting the lack of consent element was not overwhelming.  It was sufficient, however, for this court to conclude that the Nevada Supreme Court's decision to deny relief was not "objectively unreasonable" under the *Jackson* standard.  Ground Seven is denied.

### Ground Eight

In Claim Eight, Noguera contends that his sentence violates the constitutional proscription against cruel and unusual punishment.  Noguera contends that his sentence approximates the sentence one might receive for first-degree murder, despite the fact that his conduct caused no physical harm and was entirely consensual.

The Nevada Supreme Court rejected, without discussing, the claim contained in Ground Eight when it decided Noguera's direct appeal.  ECF No. 11-5, p. 6.  The U.S. Supreme Court has routinely held that the Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime, and does not require strict proportionality between the crime and sentence.  *See Ewing v. California*, 538 U.S. 11, 28–30 (2003) (upholding 25 years to life sentence for theft of three golf clubs imposed on defendant with long history of felony recidivism); *Andrade*,

1    538 U.S. at 77 (upholding two consecutive terms of 25 years to life for felony theft of videotapes

2    imposed on defendant with prior felony burglary convictions); *Rummel v. Estelle*, 445 U.S. 263, 271

3    (1980) (upholding life sentence, with the possibility of parole, imposed on defendant convicted of

4    felony theft (for obtaining $120.75 by false pretenses), and who had prior felony convictions for

5    fraudulent use of a credit card and passing a forged check); *but see Solem v. Helm*, 463 U.S. 277, 288

6    (1983) (striking recidivist sentence of life, without possibility of parole, because uttering a "no

7    account" check for $100 is nonviolent crime, and defendant's six prior felonies were relatively

8    minor).

9         When viewed against the backdrop of these cases, the trial court's sentence did not amount to

10   an Eighth Amendment violation.  Accordingly, the Nevada Supreme Court decision to deny

11   Noguera's Eighth Amendment claim without discussion was not contrary to, nor did it involve an

12   unreasonable application of, clearly established federal law.  *See Early v. Packer*, 537 U.S. 3, 8

13   (2002) (per curiam) (holding that state court is not required to cite U.S. Supreme Court cases, or

14   even be aware of them, to avoid its decision being "contrary to" U.S. Supreme Court precedent).

15        Ground Eight is denied.

16                          **Ground Nine**

17        In Ground Nine, Noguera claims that his constitutional rights were violated because the pre-

18   sentence investigation report prepared by the State contained inaccurate and prejudicial information.

19   Noguera's counsel objected to the report at his sentencing hearing because, in her opinion, the

20   report's conclusion demonstrated the report writer's lack of objectivity and was not supported by

21   facts contained within the body of the report.  ECF No. 29-17, p. 5-7.  In particular, she pointed to

22   language from the report which stated that "the Defendant took advantage of the innocence of a child

23   for the purpose of fulfilling his perverted sexual appetites" and to additional language that implied

24   that it was Noguera's fault that the infant to which S.G. gave birth had died.  *Id.*

25        The Nevada Supreme Court rejected, without discussing, the claim contained in Ground Nine

26   when it decided Noguera's direct appeal.  ECF No. 11-5, p. 6.  This court finds no (nor does Noguera

27   identify any) U.S. Supreme Court law that specifically addresses the issue raised by this claim.  Thus,

1  it cannot be said that the Nevada Supreme Court's decision is not entitled to deference under §

2  2254(d).  *See Musladin*, 549 U.S. at 77.  Moreover the state trial judge explicitly stated that he did

3  not "put any stock" in the pre-sentence report and rendered a more lenient sentence than the one

4  recommended by the State.  ECF No. 29-17, p. 5, 9-10.

5        Ground Nine is denied.

6                    **Ground Ten**

7        In Ground Ten, Noguera claims that his constitutional rights were violated because the

8  cumulative effect of trial court errors deprived him of a fair trial.

9        The Ninth Circuit has stated "[t]he Supreme Court has clearly established that the combined

10  effect of multiple trial court errors violates due process where it renders the resulting trial

11  fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007)(citing *Chambers v.*

12  *Mississippi*, 410 U.S. 284, 298 (1973); *see also Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th

13  Cir. 2000).  "The cumulative effect of multiple errors can violate due process even where no single

14  error rises to the level of a constitutional violation or would independently warrant reversal." *Parle*,

15  505 F.3d at 927.  Cumulative error warrants habeas relief only where the combined effect of the

16  errors had a "substantial and injurious effect or influence on the jury's verdict." *Parle*, 505 F.3d at

17  927 (quoting *Brecht*, 507 U.S. at 637).

18        Here, this court questions whether the jury was adequately instructed on the defense theory

19  that Noguera held a reasonable and good faith belief that S.G. voluntarily consented to sexual

20  intercourse.  Even if the trial court erred in that regard, however, the absence of other prejudicial

21  errors precludes a finding that Noguera was deprived of a fair trial due to multiple errors.  In this

22  regard, this court notes that, while it was somewhat misleading, Instruction 14 was not a

23  misstatement of the law or an otherwise erroneous instruction.  Moreover, the potential prejudice

24  arising from Instruction 14 was minimal inasmuch as it was highly unlikely that, but for the

25  instruction, the jury would have opted for a verdict of statutory sexual seduction.

26        For these reasons, Ground Ten is denied.

27  ///

**Ground Eleven**

In Ground Eleven, Noguera claims that he was denied his constitutional right to effective assistance of counsel due to counsel's failure to retain an expert witness to evaluate the maturity of the complaining witness. According to Noguera, evidence from an expert on S.G.'s level of maturity would have undermined the State's case that she lacked the capacity to consent to sexual intercourse. In support of this claim, Noguera points to evidence presented at trial that S.G. was very mature for her age and had already developed an understanding of sexual relations.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel (IAC): a petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

The IAC claims contained in Noguera's federal petition were presented in his state post-conviction proceeding. The Nevada Supreme Court correctly identified *Strickland* as the federal law standard applicable to the claims. ECF No. 11-12, p. 2. The state supreme court addressed the claim contained in Ground Eleven as follows:

> [A]ppellant claimed that his trial counsel was ineffective for failing to seek an independent psychological examination of the victim. Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Appellant failed to demonstrate that there was a compelling need for an evaluation because the sexual assault accusations were corroborated by the victim's pregnancy and appellant's statements. *Abbott v. State*, 122 Nev. 715, 724, 138 P.3d 462, 468 (2006). Further, appellant failed to demonstrate that the victim's mental or emotional state affected her ability to tell the truth. *Id*. Appellant failed to demonstrate a reasonable probability of a different outcome had counsel sought an independent psychological examination of the victim.

*Id*. at 3.

In this court's view, the Nevada Supreme Court misapprehended Noguera's argument as to why his defense would have benefitted from an expert opinion regarding S.G.'s level of maturity.

23

That is, Noguera is not claiming that the sexual intercourse did not occur or that S.G.'s testimony was not truthful. Instead, he is focusing on the issue of S.G.'s capacity to consent.

Even so, Noguera has not established that counsel's failure to retain an expert constituted ineffective assistance of counsel. "[T]he presentation of expert testimony is not necessarily an essential ingredient of a reasonably competent defense." *Bonin v. Calderon*, 59 F.3d 815, 834 (9th Cir. 1995). More importantly, Noguera has presented no evidence setting forth the testimony an expert witness would have provided or demonstrating that it actually would have supported his defense. *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (no ineffective assistance of counsel for failing to retain expert where petitioner did not offer evidence that expert would have testified). In addition, any speculation as to what an expert would have said is not sufficient to show prejudice. *See Grisbv v. Blodgett*, 130 F.3d 365, 373 (9th Cir.1997) ("Speculation about what an expert could have said is not enough to establish prejudice.").

Ground Eleven is denied.

**Ground Twelve**

In Ground Twelve, Noguera claims that he was denied his constitutional right to effective assistance of counsel due to trial and appellate counsel's failure to argue that the imposition of a mandatory life sentence in his case was unconstitutional.

The Nevada Supreme Court addressed the claim as follows:

> [A]ppellant claimed that his trial counsel was ineffective for failing to assert that his sentence was cruel and unusual punishment and violated equal protection principles. Appellant failed to demonstrate that his counsel's performance was deficient or that he was prejudiced. On direct appeal, appellant asserted that his sentence was cruel and unusual and this court rejected that challenge. [Citation omitted.] In addition, appellant failed to demonstrate his sentence violated his equal protection rights because his claim was not based on a fundamental right and the sentence was rationally related to a legitimate governmental interest. *See Gaines v. State*, 116 Nev. 359, 371-72, 998 P.2d 166, 173-74 (2000). Therefore, the district court did not err in denying these claims.
>
> . . .
>
> [A]ppellant claimed that his appellate counsel was ineffective for failing to argue that his sentence was cruel and unusual punishment and violated equal protection principles. Appellant failed to demonstrate that his counsel's performance was deficient or that he was prejudiced. As discussed previously, appellant argued his

24

sentence was cruel and unusual punishment on direct appeal and he failed to demonstrate his sentence violated equal protection. Therefore, the district court did not err in denying these claims.

ECF No. 11-12, p. 4-6.

For reasons discussed above in relation to Ground Eight, there is not a reasonable probability that an Eighth Amendment proportionality argument, by either trial or appellate counsel, would have been successful. The same goes for an argument that Noguera's sentence was unconstitutional because the relevant statute deprived the trial court of sentencing discretion. "[T]he authority to define and fix the punishment for crime is legislative." *Ex parte United States*, 242 U.S. 27, 42 (1916). Criminal defendants do not have a constitutional right to individualized sentences, and the legislature may set fixed mandatory and determinate sentences for particular offenses. *See Lockett v. Ohio*, 438 U.S. 586, 604–05 (1978) (plurality opinion) ("[I]n noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes"); *United States v. Belgard*, 894 F.2d 1092, 1100 (9th Cir. 1989) (noting, in the context of a challenge to the United States Sentencing Guidelines, that "Congress has the power to enact mandatory and determinate sentencing laws and to completely divest the courts of their sentencing discretion").

Because a challenge to his sentence on constitutional grounds was legally unsupportable, Noguera fails to meet either prong of the *Strickland* standard for this claim. Ground Twelve is denied.

**Ground Thirteen**

In Ground Thirteen, Noguera claims that he was denied his constitutional right to effective assistance of counsel because counsel did not seek recusal of the trial judge on the ground that he was biased and because counsel failed to object to certain comments made by the prosecutor. As evidence of bias, Noguera cites to the trial judge's refusal to allow defense counsel to ask prospective jurors whether they believed an eleven year old could have a consensual sexual relationship and to comments the judge made in relation to the issue that, according to Noguera, showed he did not think consent was a viable defense and would go to unfair lengths to prevent the

defense from making it effective.  ECF No. 29-12, p. 5-7.  Noguera also cites to comments the judge

made while settling jury instructions. ECF No. 29-13, p. 45-46, 52.  He argues that these comments

demonstrated the judge's hostility towards the defense and indicated the judge would only accept a

verdict on either sexual assault or lewdness.  In addition, he claims that various comments made by

the prosecutor demonstrated that she and the judge were "acting in collusion."

     In affirming the lower court's denial of post-conviction relief, the Nevada Supreme Court

stated as follows:

> [A]ppellant claimed that his trial counsel was ineffective for failing to argue
> that the district court was biased because it believed appellant was guilty.  Appellant
> failed to demonstrate that his trial counsel's performance was deficient or that he was
> prejudiced.  Appellant asserted that the district court's statements concerning the
> denial of proposed jury instructions demonstrated bias.  However, adverse rulings
> "during the course of official judicial proceedings do not establish legally cognizable
> grounds for disqualification." *In re Petition to Recall Dunleavy*, 104 Nev. 784, 789,
> 769 P.2d 1271, 1275 (1988).  Further, when placed in context, the challenged
> statements did not demonstrate that the district court had a deep-seated antagonism
> against appellant. *Liteky v. United States*, 510 U.S. 540, 555 (1994).  Appellant failed
> to demonstrate a reasonable probability of a different outcome had his counsel argued
> the district court was biased against appellant. Therefore, the district court did not err
> in denying this claim.

ECF No. 11-12, p. 3.  In the same decision, the state supreme court also found no merit to Noguera's

claim that counsel was ineffective in failing to object to alleged misconduct in remarks made by the

prosecutor.  *Id*. at 4.

     "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."

*Liteky*, 510 U.S. at 555.  Instead, a party seeking recusal on grounds of impartiality generally must

point to some extrajudicial source for the bias.  *Id*. at 551.  As the Court said in *Liteky*:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in
> the course of the current proceedings, or of prior proceedings, do not constitute a
> basis for a bias or partiality motion unless they display a deep-seated favoritism or
> antagonism that would make fair judgment impossible.

*Id*. at 555.  *See also United States v. Conforte*, 624 F.2d 869, 882 (9th Cir.), *cert. denied*, 449 U.S.

1012  (1980) (a judge's views on legal issues may not serve as a basis for motions to disqualify).

     Here, even if Noguera's counsel had moved to disqualify the trial judge, the motion would

have been based almost entirely on adverse rulings by the court.   Under the prevailing *Liteky*

standard, there is not a reasonable probability that such a motion would have been successful. And, for the reasons discussed above in relation to Ground Six, Noguera was not unduly prejudiced by alleged prosecutorial misconduct (nor has he substantiated his allegation of collusion between the trial judge and the prosecutor). Accordingly, this court cannot conclude that there is no reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Richter*, 562 U.S. at 112.

The state court's decision is therefore entitled to AEDPA deference. Ground Thirteen is denied.

### Ground Fourteen

In Ground Fourteen, Noguera claims that he was denied his constitutional right to effective assistance of counsel due to counsel's failure to correct several erroneous jury instructions. He specifically cites to Instructions 5, 8, 9, and 11, and argues that effective counsel would have objected for the reasons discussed above in relation to Ground One.

The Nevada Supreme Court addressed the claim as follows:

> [A]ppellant claimed that his trial counsel was ineffective for failing to object . . . to erroneous jury instructions. Appellant failed to demonstrate that he was prejudiced because the underlying claims were considered and rejected on appeal.[2] *Noguera v. State*, Docket No. 48609 (Order of Affirmance, July 7, 2009). Therefore, the district court did not err in denying these claims.
>
> _____
>
> [2] Appellant acknowledged that this court rejected his challenges to the jury instructions on direct appeal, but asserts that this court only reviewed the challenges to instructions 5, 8, 9, and 11 under a plain error standard. Given the facts of the case and this court's conclusions on direct appeal, we conclude appellant failed to demonstrate a reasonable probability of a different outcome had trial counsel objected to the use of those instructions.

ECF No. 11-12, p. 4.

As outlined in this court's analysis of Ground One, Noguera has not shown that he was unduly prejudiced by the trial court's use of the challenged instructions. Accordingly, this court concludes that the Nevada Supreme Court's decision to deny Noguera's IAC claim under the *Strickland* standard was not unreasonable. Ground Fourteen is denied.

///

///

**Ground Fifteen**

In Ground Fifteen, it is not clear whether Noguera is repeating the claim he makes in Ground Ten or if he is claiming that he is entitled to habeas relief due to the cumulative prejudicial effect of counsel's deficient performance. Apparently interpreting the claim as the former, the Nevada Supreme Court rejected this claim in post-conviction proceedings on the ground that the court had already rejected it when it decided Noguera's direct appeal. ECF No. 11-12, p. 6. For reasons discussed above in relation to Ground Ten, that determination is entitled to AEDPA deference.

To the extent Noguera seeks relief based on the cumulative effect of counsel's alleged errors, this court finds no error or omission that placed the performance of trial or appellate counsel below the constitutional standard. Moreover, Noguera has not shown that a deficient performance by counsel combined with other errors deprived him of a fair trial. *Cf. Mak v. Blodgett*, 970 F.2d 614, 622 (9th Cir. 1992) (concluding counsel's deficiencies together with "other significant errors . . . considered cumulatively, compel affirmance of the district court's grant of habeas corpus").

Ground Fifteen is denied.

IV. CONCLUSION

For the reasons set forth above, Noguera's petition for habeas relief is denied.

*Certificate of Appealability*

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA

will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

The COA standard is not high. Noguera must only "'sho[w] that reasonable jurists could debate'" the district court's resolution or that the issues are "'adequate to deserve encouragement to proceed further.'" *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc) (citations omitted). Having reviewed its determinations and rulings in adjudicating Noguera's petition, the court finds that the *Slack* standard is met with respect to the court's denial of Ground Two and its denial of Ground Seven. The court therefore grants a certificate of appealability as to those issues. The court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Noguera's other habeas claims.

**IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus (ECF No. 6) is DENIED. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability is GRANTED as to the following two issues:

Whether petitioner is entitled to habeas relief due to the state trial court's failure to adequately instruct the jury on the defense theory of the case.

Whether petitioner is entitled to habeas relief because evidence presented at his state trial was insufficient to prove lack of consent beyond a reasonable doubt.

Except for these two issues, a certificate of appealability is DENIED.

Dated this 18th day of May, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE